NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAIRAHAAN MALLARD, : <br> : <br> Petitioner, : <br> : <br> v. : <br> : <br> GREG BARTKOWSKI, et al., : <br> : <br> Respondents. : | Civil Action No. 11-3442 (PGS) <br><br> OPINION |

**APPEARANCES:**

Tairahaan Mallard
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
    Petitioner pro se

Lucille M. Rosano
Special Deputy Attorney General
Acting Assistant Prosecutor
Appellate Section
Essex County Prosecutor's Office
Essex County Veterans Courthouse
50 West Market Street
Newark, NJ 07102
    Counsel for Respondents

**SHERIDAN**, District Judge

    Petitioner Tairahaan Mallard, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.[1] The respondents are Administrator Greg Bartkowski and the Attorney General of New Jersey.

For the reasons stated herein, the Petition shall be dismissed with prejudice as time-barred.

## I. BACKGROUND

A. <u>Factual Background</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[2]

> On August 2, 2000 Eddie Allison stopped with his two sons, Jermesse, age eighteen, and Mikel, age fifteen, at Crown Pizza on Main Street in Orange to buy take-out food. Mr. Allison remained in his van fifteen feet from Crown Pizza. Mikel stood in the front doorway while Jermesse waited at the counter for their food. Suddenly, Jermesse heard a gunshot and heard his brother yell. Turning around, he saw Mikel fall backward as two more gunshots were fired. Jermesse pulled Mikel back into the restaurant. Mikel died from the gunshot wounds.
>
> …
>
> [Crystal] Carter testified that defendant, whom she identified in court and whom she had known from the neighborhood for years as "T," had asked her for a ride in her Toyota a few days before the shooting of Mikel Allison. She saw him again on the evening of August 2 near the border of East Orange and Orange when, while she was stopped at a stop sign, he jumped into the front passenger seat of her car while holding a small, gray gun. The clothing he was wearing matched the clothing descriptions provided by Jermesse and Mr. Allison.

---

[1] Title 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> Although a bandanna was covering the lower half of the man's face, Carter recognized the man as "T" by his eyes, the top of his head and his voice. According to Carter, "T" "was very aggressive" when he jumped in her car, ordering her to keep driving. Carter was frightened that she was "going to get robbed or something bad was going on," but because defendant had a gun she did as she was told and drove him to Main Street.
>
> Carter remained in the driver's seat while "T" exited her car. She saw him approach somebody on the sidewalk in front of Crown Pizza and shoot him "right there on the sidewalk." "T" immediately "jumped back in the car and told [her] to drive." A few blocks later, he left.

State v. Mallard, 2010 WL 5348798, *1-2 (N.J. Super. App. Div. November 3, 2010) (footnote omitted).

B. Procedural History

Following a jury trial in the Superior Court of New Jersey, Law Division, Essex County, Petitioner was convicted of murder, N.J.S.A. 2C:11-3a, and the associated weapons charges of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b, and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. Petitioner was acquitted of first-degree carjacking, first-degree kidnapping, and assault. Petitioner was sentenced to an aggregate term of imprisonment of thirty-five years, with a thirty-year period of parole ineligibility.

On June 18, 2004, the Superior Court of New Jersey, Appellate Division, affirmed the convictions. (Answer, Ex. 6, Opinion of Superior Court, Appellate Division, dated June 18, 2004.) On April 8, 2005, the Supreme Court of New Jersey denied certification. State v. Mallard, 183 N.J. 256 (2005).

Thereafter, Petitioner filed his state petition for post-conviction relief ("PCR").[3] The PCR court heard oral argument and, on October 6, 2008, denied relief. (Answer, Exs. 11, 12.) On November 3, 2010, the Appellate Division affirmed the denial of relief. State v. Mallard,

---

[3] The date of the filing of the state petition for post-conviction relief is a matter in dispute here.

2010 WL 5348798 (N.J. Super. App. Div. Nov. 3, 2010). On April 14, 2011, the Supreme Court of New Jersey denied certification. State v. Mallard, 205 N.J. 520 (2011).

This Petition, dated May 27, 2011, followed. Petitioner submitted an Amended Petition on September 26, 2011. Here, Petitioner asserts the following grounds for relief: (1) the trial court deprived Petitioner of his due process rights when it improperly admitted evidence of an impermissibly suggestive out-of-court identification, and resultant in-court identification, by Jermesse Allison; (2) Petitioner was deprived of his right to a fair trial by the trial court's failure to instruct the jury to apply special scrutiny to the testimony of Crystal Carter, including her possible motivation for cooperation with the State; (3) Petitioner was deprived of his Sixth Amendment right to confront the witnesses against him by the admission of Crystal Carter's testimony that she had obtained information from people in the neighborhood that Petitioner was the shooter; (4) Petitioner's trial counsel provided constitutionally deficient representation when he elicited testimony from Crystal Carter regarding her conversations with people in the neighborhood that Petitioner was the shooter; (5) Petitioner was deprived of his right to a fair trial when he was compelled to show the jury his potentially frightening tattoos; (5)(a) Petitioner was deprived of his right to constitutionally effective assistance of appellate counsel by his counsel's failure to raise this issue on direct appeal; (6) the jury instruction on identification testimony was so deficient as to deprive Petitioner of his right to a fair trial; (7) Petitioner was deprived of effective assistance of appellate counsel, and of his right to due process, when appellate counsel failed to challenge the out-of-court identification of Crystal Carter, which was based on hearsay; and (8) trial counsel provided constitutionally deficient representation when he waited until the jury was already deliberating to request a limiting instruction regarding Petitioner's tattoos. (Amended Petition, Docket Entry No. 5, Addendum II.)

By Opinion and Order entered October 18, 2011, this Court ordered Petitioner to show cause why the Petition should not be dismissed as time-barred. Petitioner responded with a Letter Response and exhibits, ("Response to OTSC"), regarding his efforts to file his state petition for post-conviction relief beginning December 31, 2005, when he alleges he submitted his state PCR petition to prison officials for mailing, and culminating in the docketing of his state PCR petition as "filed" on October 16, 2007. Thereafter, this Court took the matter of the timeliness of the Petition under advisement and ordered Respondents to answer. Respondents have answered, asserting (a) that the Petition must be dismissed as time-barred, (b) that the Petition must be dismissed based upon Petitioner's failure to exhaust two of his asserted grounds for relief, and (c) that the Petition is meritless. Petitioner has replied and this matter is now ready for decision.[4]

## II. ANALYSIS

As noted above, Respondents assert that the Petition must be dismissed with prejudice as time-barred. Petitioner argues that he diligently tried to file his state PCR petition for a period of almost two years and that the delay in filing was not his fault. (Response to OTSC.)

A.   Petitioner's State Post-Conviction Relief Proceedings

Petitioner asserts that he first deposited his state post-conviction relief petition in the prison mail system on December 31, 2005. (Response to OTSC, at 3.) He acknowledges that the PCR petition was actually mailed to the Superior Court of New Jersey, Essex County, on January 15, 2006. (Response to OTSC, Ex. 1, prison postage receipt.) Petitioner further asserts that after waiting "several months with no response" from the court, (Response to OTSC, Ex. 6,

---

[4] After Respondents filed their Answer, Petitioner moved, (Docket Entry No. 26), for appointment of counsel and for an evidentiary hearing regarding his various claims of ineffective assistance of trial counsel.

5

Letter to Paula Dow and Ex. 7, Letter to Annette Jones), he called the Criminal Case Manager's Office and spoke with Shalinda Britton, who informed him that there was no record of the PCR petition and that he should send another copy.

Petitioner asserts that he submitted a second copy of the PCR petition, but again did not hear from the PCR court. Petitioner does not state the date he spoke to Shalinda Britton, or the date he sent the second copy of his PCR petition to the court, nor does he provide a copy of the prison postage receipt. Petitioner asserts that, again, he received no response from the PCR court. (Response to OTSC, at 4.)

Petitioner asserts that, on February 9, 2007, after he received no response from the PCR court, and more than a year after he originally mailed his state PCR petition, Kevin Jackson, the Director of the Inmate Legal Association, wrote a letter on Petitioner's behalf to Ingrid Yurchenco, Acting Deputy of the Public Defender's Office in Newark, describing the problems Petitioner was having filing his PCR petition, and asking for her assistance. (Response to OTSC, at 4, and Ex. 3.) In that letter, Mr. Jackson stated, "Mr. Mallard need[s] this matter correctly filed and retroactive to his initial date [he] sent it in because if not, Mr. Mallard will have a problem with his time factor if the case need[s] Federal Habeas Review in the future." (Id.) On March 9, 2007, Ms. Yurchenco sent Petitioner a letter advising him that she had checked with the state court, that there was no record of his PCR petition, and that he should submit another copy to the attention of Annette Jones, the Supervisor of Essex County Criminal Records Office. (Response to OTSC, Ex. 4.) Petitioner does not state the date that he submitted the third copy of his PCR petition, nor does he state whether he sent it to the attention of Ms. Jones, nor has he provided a prison postage receipt.

Petitioner asserts that, on April 16, 2007, he wrote a letter to the trial judge explaining the

difficulties he had been having filing his state PCR petition. (Response to OTSC, Ex. 5.) Petitioner also asserts that, on May 2, 2007, he wrote a letter to Paula T. Dow, of the Essex County Prosecutor's Office, asking for assistance in obtaining verification that the Prosecutor's Office had received copies of his submissions to the PCR court, which he alleged he might need for habeas corpus proceedings. (Response to OTSC, Ex. 6.) Petitioner asserts that on July 3, 2007, he wrote to Annette Jones, Supervisor of the Criminal Case Manager's Office in Newark, explaining his difficulties in filing his state PCR petition. In that letter, Petitioner stated "I seriously need for my Notice of Petition for P.C.R. Petition to be filed and pursuant to the initial and original date that I first sent my Notice of Petition for P.C.R. out to be filed. (In case I need to file a Writ of Habeas Corpus.)" (Response to OTSC, Ex. 7.) It is not clear whether Petitioner included another copy of the state PCR petition with this letter to Ms. Jones; the letter states that he is enclosing the prison postage receipt for the January 15, 2006, mailing. Petitioner asserts that he received no responses to these various letters.

Petitioner asserts that on September 18, 2007, he telephoned the office of Annette Jones and spoke with her regarding the difficulties he had experienced in filing his state PCR petition. Petitioner states that he asked Ms. Jones "to file [the PCR] petition under the original date of January 15, 2006 in case I have to file for Habeas Corpus." (Response to OTSC, at 5.) Petitioner states that Ms. Jones advised him to send a fourth copy of the state PCR petition to her and that she would personally attend to it. Petitioner asserts that he followed up this conversation with a letter to Ms. Jones on September 26, 2007. Again, he asked that the PCR petition be filed under the original date on the petition, in case he had to proceed to a federal habeas corpus proceeding. (Response to OTSC, Ex. 8.) It appears that Petitioner enclosed another copy of the state PCR petition with this letter, although he does not explicitly so state,

7

nor does he provide a prison postage receipt.[5] Petitioner's state PCR petition was eventually filed under the date of October 16, 2007. (Answer, Ex. 7, "Filed" copy of PCR petition.)

During the state PCR proceedings, the State initially argued that the PCR petition was time-barred under state law, noting that it had not received the service copy of the PCR petition purportedly originally mailed in January 2006, (Answer, Ex. 10, State's Brief in opposition to PCR petition at 28-30), but the State later withdrew that defense, (Answer, Ex. 10, Opinion of Superior Court, Law Division, Essex County, denying PCR petition, at 4). In its opinion on the merits of Petitioner's claims, the PCR court described the PCR petition as having been filed on December 31, 2005, without citation to any legal authority, and although the timeliness and filing date of the state PCR petition were no longer at issue. (Answer, Ex. 10, Opinion of Superior Court, Law Division, Essex County, denying PCR petition, at 3.) In its opinion affirming the denial of relief, on the merits, the Appellate Division described the PCR petition as having been "filed" on October 16, 2007, again without citation to any legal authority and although, again, the timeliness of the PCR petition under state law was not in dispute in that proceeding. State v. Mallard, 2010 WL 5348798, *3.

B.  The Federal Habeas Limitations Period

The limitations period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d),[6]

---

[5] Petitioner also asserts that other prisoners were having difficulty filing PCR petitions with the same trial court, purportedly because a Darryl Vartabedian at the court was deliberately failing to file them, attaching to his Response copies of several letters from other prisoners to that court and to their public defenders. (Response to OTSC, Ex. 13.) Petitioner has provided no evidence to support the accusation that a court employee was deliberately failing to file PCR petitions or that Mr. Vartabedian had any involvement with Petitioner's PCR petition.

[6] The limitations period is applied on a claim-by-claim basis. See Fielder v. Verner, 379 F.3d 113 (3d Cir. 2004), cert. denied, 543 U.S. 1067 (2005); Sweger v. Chesney, 294 F.3d 506 (3d Cir. 2002).

which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Here, all of Petitioner's claims were known to him by the time he concluded his direct appeals. Thus, evaluation of the timeliness of this § 2254 petition requires a determination of, first, when the pertinent judgment became "final," and, second, the period of time during which any application for state post-conviction relief was "properly filed" and "pending."

A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

To statutorily toll the limitations period, a state petition for post-conviction relief must be

9

"properly filed."

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record. And an application is "<u>properly</u> filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally. But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims <u>contained in the application</u> are meritorious and free of procedural bar.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (emphasis in original) (citations and footnote omitted).

Where a state court has rejected a petition for post-conviction relief as untimely, however, it was not "properly filed" and the petitioner is not entitled to statutory tolling under § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408 (2005). This is so even where, in the alternative, the state court addresses the merits of the petition in addition to finding it untimely. Carey v. Saffold, 536 U.S. 214, 225-26 (2002).

An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24. More specifically, "The time that an application for state post conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, <u>provided that</u> the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, 191 (2006) (finding that time between denial of post-conviction relief and filing of appeal was not tolled where appeal was untimely, even

where state considered untimely appeal on its merits). However, "the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)." Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

The limitations period of § 2244(d) also is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549 (2010); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). However, the Court of Appeals has cautioned that equitable tolling should be invoked sparingly. United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998). Equitable tolling applies

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient.

Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998) (citations and punctuation marks omitted).

Extraordinary circumstances permitting equitable tolling have been found where: (1) the petitioner has been actively misled by the respondent; (2) the petitioner has been prevented from asserting his rights in some extraordinary way; (3) the petitioner timely asserted his rights in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence. Holland, 130 S.Ct. at 2565. This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is

exhausting state court remedies as well." LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (citing Jones, 195 F.3d at 160). A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. See Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence *in the circumstances*.") (emphasis added) (internal quotation marks and citation omitted); see also Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution *in light of his or her particular circumstances*." (emphasis added)).

Ross v. Varano, 713 F.3d 784, (3d Cir. 2013) (footnote omitted).

Finally, "a pro se prisoner's [federal] habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).

C. The Timeliness of This Habeas Petition

Here, Petitioner's conviction became "final" on July 7, 2005, ninety days after the Supreme Court of New Jersey denied certification on April 8, 2005. Accordingly, Petitioner had until July 7, 2006, to file his federal habeas petition, unless the one-year limitations period is subject to statutory or equitable tolling.

To the extent Petitioner is arguing that he is entitled to statutory tolling because his state PCR petition was "properly filed" under New Jersey law on December 31, 2005, when he placed it in the prison mail system, or on January 15, 2006, when it was actually mailed, he is mistaken. New Jersey courts have never adopted a "prison mailbox rule" akin to the federal rule of Houston v. Lack, which deems submissions "filed" when they are delivered to prison officials for forwarding to the clerk of a federal court. See Oliver v. Lee, No. L-6590-08, 2012 WL 1414081, *3 (N.J. Super. App.Div. April 25, 2012). This Court lacks the authority and jurisdiction to create such a rule of state law. See Flowers v. Phelps, No. 12-3202, 2013 WL

718752, *3 (3d Cir. Feb. 28, 2013). Cf. Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 83 (3d Cir. 2013) (applying Pennsylvania "prison mailbox rule" to deem state petition for post-conviction relief "filed" when it was delivered to prison authorities for mailing to the state court). Accordingly, Petitioner's state PCR petition was not "properly filed" until October 16, 2007, long after the federal habeas limitations period had expired. Thus, Petitioner is not entitled to statutory tolling during the pendency of his state post-conviction relief proceedings, and this federal Petition is untimely unless Petitioner is entitled to equitable tolling.

Both extraordinary circumstances and reasonable diligence are required for equitable tolling. Here, it is apparent that Petitioner's first submission of his state PCR petition did not get filed. Where it went missing, however, is unknown. Petitioner argues that he had to re-submit the Petition three times before it was received and filed, beginning "several months" after his first submission. However, he has failed to provide this Court with the dates of his subsequent submissions or with prison postage receipts to verify the mailing dates or the actual mailing of those subsequent submissions within the federal limitations period. Thus, he has failed to establish "extraordinary circumstances" arising out of the alleged difficulties in actually filing his state PCR petition <u>within the federal limitations period</u>. In the absence of extraordinary circumstances <u>within the federal limitations period</u>, any difficulties in filing the state PCR petition <u>after</u> the expiration of the federal limitations period do not constitute "extraordinary circumstances" justifying equitable tolling.

In any event, Petitioner clearly has not demonstrated that he exercised "reasonable diligence." With only approximately six months of his one-year federal limitations period remaining at the time he first mailed his state PCR petition, he waited "several months" to contact the court to determine whether his petition had been received. As he repeatedly referred

13

to the federal limitations period in his later communications, it is clear that he was aware of the importance of properly filing his state PCR petition in order to toll the federal limitations period. Even so, months transpired between each communication with the state court and more than a year transpired before he contacted the Public Defender's Office to request assistance. Petitioner apparently had the means to utilize telephone and written communications regularly during this period, yet he did not act timely to ensure that his PCR petition was received and properly filed before the expiration of the federal limitations period. Nor did Petitioner file a "protective" habeas petition in federal court, which could have been stayed pending exhaustion of his state remedies, in order to preserve his rights. See Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005); Rhines v. Weber, 544 U.S. 269, 276-77 (2005); Crews v. Horn, 360 F.3d 146, 152 (3d Cir. 2004); Duncan v. Walker, 533 U.S. 167, 182-83 (2001) (Stevens, J., concurring), and 192 (Breyer, J., dissenting).

Had Petitioner tried four times to file his state PCR petition before the expiration of the federal limitations period, and had Petitioner timely contacted the court during that period to ensure receipt and filing of his PCR petition, this Court would be presented with a different issue. Instead, however, it appears that Petitioner waited until after the federal limitations period had expired, or was near to expiring, before making any effort to ascertain the status of his state PCR petition. In the absence of reasonable diligence during the federal limitations period, Petitioner's subsequent efforts to file his state PCR petition do not constitute "reasonable diligence" adequate to justify equitable tolling. This federal Petition, therefore, will be dismissed with prejudice as untimely.[7]

---

[7] As the Petition will be dismissed with prejudice, being untimely, this Court need not reach Respondents' exhaustion defense. Similarly, Petitioner's Motion for appointment of counsel and for evidentiary hearing will be denied as moot.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable whether this Court is correct in its ruling that the Petition is untimely. No certificate of appealability will issue.

## V. CONCLUSION

For the reasons set forth above, the Petition shall be dismissed with prejudice as untimely. An appropriate order follows.

_____
Peter G. Sheridan
United States District Judge

Dated: 6/10/13